Merrimack,
No. 4572.

PUBLIC SERVICE COMPANY OF NEW HAMPSHIRE

*v.*

STATE OF NEW HAMPSHIRE.

Argued July 23, 1957.
Decided November 26, 1957.

*Sulloway, Hollis, Godfrey & Soden (Mr. Hollis* orally), for the plaintiff.

*Louis C. Wyman,* Attorney General, and *Warren E. Waters,* Deputy Attorney General ( *Mr. Waters* orally), for the defendant.

LAMPRON, J. By RSA 83:1 it is provided that the plaintiff,

being "engaged within this state as a public utility in the . . . generation, distribution, transmission . . . sale of . . . electric energy, shall pay to the state an annual tax, as of April first of each year, upon the actual value of the franchises held or exercised by the utility as such by virtue of the laws of this state, at a rate as nearly equal as may be to the average rate of taxation at that time upon other property throughout the state." Section 3 of said chapter provides that "The tax commission shall determine the value of the franchises taxable hereunder as of April first."

Under section 4 said State Tax Commission shall consider as evidence of value of the franchises of the public utility "the difference between (1) its earnings available under proper accounting and management for dividends on its common stock, undivided profits or surplus, capitalized at such rate as such public utility may lawfully be permitted to earn upon the value of its property devoted to such public utility use, and (2) the value of all its assets, but not including franchises taxable hereunder, less the amount of its outstanding preferred stock, bonds and all other indebtedness incurred for such public utility use, except its common stock, making due allowance for property not used in its utility business and earnings or losses resulting therefrom; and such other evidence as may be pertinent including the fair average market value for the preceding year of the outstanding securities of any such utility."

RSA ch. 83 came into existence as Laws 1931, c. 124. The first four sections of each, with which we are mostly concerned, are identical in language. In 1927 the Legislature created a commission for study and analysis of the general subject of state and municipal taxation. Laws 1927, c. 201. This commission in its report to the Legislature in 1929 stated that "In recent years the development of electric utilities is proceeding at a rapid pace. The nature of their business is such that to carry it on they must be granted certain public rights . . . The value of the various rights which are included in the broad term 'franchise' cannot be reached by any of the methods used in taxing tangible property . . . The present method of taxing railroads and certain other corporations of statewide operation is such as to recognize this franchise value, and it is felt that an adaptation of that method could be applied to electric utilities. Accordingly the commission recommends the enactment of a law imposing a franchise tax on electric utilities." Report of Recess Tax Commission of 1927-28, pp. 9, 10.

At that time a railroad was required to pay "to the state an annual tax, as of April first of each year, upon the actual value of its property and estate used in its ordinary business . . . at a rate as nearly equal as may be to the average rate of taxation at that time upon other property throughout the state." P. L., c. 69, s. 1, now RSA 82:2. The value of the franchise of a railroad was to be included. *Fitchburg Railroad* v. *Prescott*, 47 N. H. 62, 67.

The first bill introduced in the Legislature of 1929 sought to impose a tax upon "the actual value of the franchises owned and exercised in connection with such utility." H. B. 13. See Journal House Rep., 1929, *p.* 59. This bill in new draft included gas as well as electric public utilities and proposed a tax "upon the actual value of its franchises, property and estate owned and exercised in connection with such utility." Since the utility's tangible property was then taxed locally the bill provided that the State Treasurer was to pay out of the revenue to each town and city the amount of tax due on the property and estate of utilities located therein. Under this bill the Tax Commission was to consider as evidence of value the fair average market value of the stocks, bonds and of any other funded or floating debt of the utility. If this could not be done the difference between the gross earnings and the operating expenses and taxes for the preceding year was to be capitalized at such per cent as should appear to be equitable under all the circumstances. The Commission could also consider "other facts which may be material in finding the actual value."

The bill in new draft was submitted to this court by the Senate and an opinion that it was constitutional was rendered. *Opinion of the Justices*, 84 N. H. 559, 566. It was not enacted into law, however, and a tax on franchises of gas and electric public utilities was first imposed by said chapter 124 of Laws 1931, now RSA ch. 83.

The first issue considered is what the Legislature intended to tax when it imposed an annual tax "upon the actual value of the franchises held or exercised by the utility as such by virtue of the laws of this state." RSA 83:1. The company maintains that from "the history of utility franchise taxation in general, from the use of the word 'franchise' in the regulatory statutes as the equivalent of the right to do business conferred by order of the Commission and from the enactment by the Legislature of a tax upon franchises which had previously been held by this Court to be constitutional as levied upon the monopoly right to do business . . . what is in-

tended to be taxed under the franchise tax statute is the monopoly right to do business." The State contends that "the word 'franchise' as used in the present statute is not intended to have a restricted meaning, but is to cover a wide range of powers and rights. The word is here employed in connection with regulated public utilities· which are the recipients of special rights and privileges from the State; and when used with the word 'value' it includes all of the intangible values which arise from the authority possessed by the utility to exercise such rights· and enjoy such privileges."

"Whenever separate articles of tangible property are joined together, not simply· by a unity of ownership, but in a unity of use, there is not infrequently developed a property, intangible though it may be, which in value exceeds the aggregate of the value of the separate pieces of tangible property." *Adams Express Co.* v. *Ohio*, 166 U. S. 185, 219. "There is nothing in the nature of things . . . which restrains a State from taxing . . . such intangible property." *Id.*, 218, 219. "A franchise, or right to do certain things, giving a power to enter upon transactions which is not possessed by the people as of common right, is property." *Opinion of the Justices*, 82 N. H. 561, 564. The right to exercise public utility functions does not belong to the utility as of common right. "It is acquired by the state's grant. It is desired because it has been taken out of the field of common right; and its exclusive character may give it value." *Opinion of the Justices*, 84 N. H. 559, 568.

We hold that any intangible value arising from the permission and approval of the Public Utilities Commission to a public utility corporation to exercise the right and privilege of engaging in the business of generating, distributing, transmitting and selling electric energy in this state (RSA 374:22) is property upon which a tax can be imposed. We hold further that in the light of the legislative and judicial history surrounding the subject it was the intent of the Legislature when it enacted Laws 1931, *c.* 124 (now RSA ch. 83) to tax the intangible value, if any, which exists in a public utility over and above the value of its physical property as a result of the rights and privileges granted to it to exercise its particular functions as a utility. *Opinion of the Justices*, 95 N. H. 543; *Metropolitan Street Ry. Co.* v. *New York*, 199 U. S. 1.

The franchise tax thus imposed is a property or estate tax levied upon the owner at fixed annual intervals. *Opinion of the*

*Justices*, 95 N. H. 543; *Bemis &c. Bag Co.* v. *Claremont*, 98 N. H. 446, 449. The property taxed is to be appraised at "its full and true value in money." RSA 75:1. *Public Service Company* v. *New Hampton*, 101 N. H. 142.

RSA 83:3 provides that the State Tax Commission is to determine the value of the franchises as of April first of each year. Section 4 provides that the Commission "shall consider as evidence of value . . . the difference between, (1) its [public utilities] earnings available under proper accounting and management for dividends on its common stock, undivided profits or surplus, capitalized at such rate as such public utility may lawfully be permitted to earn upon the value of its property devoted to such public utility use, and (2) the value of all its assets, but not including franchises taxable hereunder, less the amount of its outstanding preferred stock, bonds and all other indebtedness incurred for such public utility use, except its common stock . . . and such other evidence as may be pertinent, including the fair average market value for the preceding year of the outstanding securities of any such utility."

Under part (1) of the above formula the utility's earnings available for dividends on its common stock, undivided profits or surplus are to be capitalized. The rate of capitalization is to be such "rate as such public utility may lawfully be permitted to earn upon the value of its property devoted to such public utility use." RSA 378:7 provides that the Public Utilities Commission "shall determine the just and reasonable or lawful rates . . . to be . . . the maximum to be charged for the service to be performed" by every public utility in New Hampshire. Temporary rates, and so far as possible permanent rates (*Id.*, s. 28) "shall be sufficient to yield not less than a reasonable return on the cost of the property of the utility used and useful in the public service less accrued depreciation." *Id.*, s. 27.

In *Chicopee Mfg. Co.* v. *Company*, 98 N. H. 5, 10, the Public Utilities Commission approached the question of a reasonable rate of return for the plaintiff in this case through the cost of money method. By computing the cost of bond, preferred stock and equity money and relating it to two different capital structures for the utility the Commission arrived at a cost of money of 5.19% and 5.45% and allowed a rate of return of 5.65%. That is the rate this company was lawfully permitted to earn upon the value of its property devoted to public utility use. The allowed rate equated to a return of 10.90% on the actual equity. Giving to the words

in part (1) of the formula their usual and common meaning (*Bowdler* v. *Company*, 88 N. H. 331, 333) leads to the conclusion that equity earnings are to be capitalized at the current rate of return allowed by the Public Utilities Commission, or in this case 5.65%.

The company points out that if the words in the formula are interpreted to mean that the earnings attributable to the common stock are to be capitalized at the over-all rate of return allowed by the regulatory body in the last rate proceeding (5.65%) instead of at the rate of about 10% which plaintiff was allowed to earn on its equity, the effect is to produce a capitalized value of almost twice as much as would be produced if 10% were used. The result is that when the book value of the common stock is subtracted from the capitalized value thus arrived at a substantial franchise value is found, whereas if such earnings were capitalized at 10% no franchise value would be found upon the facts in these cases. Plaintiff argues that a tax collected on account of property which has no value or collected upon a value far in excess of any value which it has in fact is in violation of Pt. I, *Art.* 12th and Pt. II, *Art.* 5th of our state Constitution.

The company argues that the formula is discriminatory because when the earnings available for the common stock are capitalized at the over-all rate of return it results in a different tax upon the franchises of different utilities of identical size and earnings but with different capital structures. Thus if the cost of money approach is used by the regulatory body in arriving at the rate of return which a utility is to be permitted to earn, the varying capital structures will produce a different rate even though the cost of money for each class of capital is the same. In other words the statutory formula applied to a company that is earning a reasonable rate of return will show no franchise value if the company is financed solely with common stock but will show a larger franchise value as more debt and preferred money are put ahead of the common stock.

The State takes the position that the words "such rate as such public utilities may lawfully be permitted to earn" contained in the formula in said section 4 should not be interpreted to mean the over-all rate of return set by the regulatory body. The State agrees with the testimony of company witnesses that the formula so interpreted has no economic sense. However it argues that because if so interpreted, it has no economic significance and could

produce the discrimination complained of by the company, the statutory language should be given a different construction.

The State takes the position that although there are many reasonable methods of valuing franchises in the final analysis every method relies upon earnings. In other words franchise value results if earnings are greater than required to support the tangible property at its book value. The value of the entire utility property might be determined either by capitalizing the earnings themselves by a simple mathematical operation or by accepting the capitalization of such earnings as effected by investors themselves and as evidenced by the market prices at which they had valued the respective securities. *Winnipisogee Company* v. *Gilford*, 67 N. H. 514, 519. The two approaches, it is argued should produce similar results, because if an equitable factor is chosen for capitalization it would be a factor upon which investors would also capitalize in determining the amount they would pay for these securities.

As the formula is interpreted by the State the value of the intangible property subject to tax under RSA ch. 83 would be arrived at by considering as evidence of its value the result of the following: Determine the market value of the common equity by determining the average market price per share for a recent representative period. Multiply that by the average number of shares outstanding during that period. The product is the market value of the common equity, that is, the earnings attributable to it capitalized at such rate as the utility may lawfully be permitted to earn on it. The average book value of the equity for the same period is determined. The excess of the market value of the common equity over its book value would be evidence of the franchise value.

As we have said previously the Legislature can lawfully impose a property or estate tax on any intangible value, over and above the value of the utility's tangible property, which may exist as a result of the right granted to the utility to render service at a fair return in a given area and in practice free from competition. Such a value can exist regardless of how franchises are dealt with in the regulatory process. We have held in *Public Service Company* v. *New Hampton, supra,* that the value of a utility plant for tax purposes and its value for rate-making purposes need not be the same. 1 Wilcox, Whitten on Valuation of Public Service Corporations, 37, 49, 56, 62. The approach as well as the result sought are

different. In determining value for rate-making purposes attention is focused on the cost to the utility of furnishing a public service while value for taxation is based on commercial value or the profitableness of the utility enterprise. 1 Bonbright, Valuation of Property, 515, 516.

The imposition of a tax on the franchise or intangible value of a utility over and above the value of its tangible property is solely the function of the Legislature. N. H. Const., Pt. I, *Arts*, 12th 28th; *Id.*, Pt. II, *Arts.* 5th, 6th; *Kolodny* v. *Laconia*, 96 N. H. 337, 338. Subject to constitutional restrictions it also has the sole authority to determine the mode and manner in which the tax is to be imposed. *Boston & Maine R. R.* v. *Concord*, 78 N. H. 192, 194; *Kolodny* v. *Laconia, supra.* The legislative will pertaining thereto is to be found in the enacted expression of it. *Trustees &c. Academy* v. *Exeter*, 92 N. H. 473, 478. "The courts have no function of redrafting legislation in order to make it conformable to an intention not fairly expressed in it." *Id.*

Both the State and the company agree that if the words of the formula in RSA 83:4 are interpreted according to their common and approved usage (*Colston* v. *Railroad*, 78 N. H. 284, 286) as requiring that the equity earnings be capitalized at the current regulatory rate of return, the formula has no economic significance. The reason is that the rate of return is a composite of the cost of three components of capital; bonds, preferred stock and equity. The capitalization of the equity earnings which are by far the more costly (10%) at the rate of return (5.65%) which is a little more than half of the cost component of the common stock is "illogical and unjust." The rate of return is fixed for the investment as a whole, including bonds and preferred stock. Hence capitalization of equity earnings alone at that over-all rate cannot be a sound measure of franchise value.

The weaknesses and uncertainties of the statutory formula have been the subject of constant and repeated criticism. "In recent years the franchise tax has been roundly condemned by the Tax Commission, by the last two interim commissions to study the tax structure and by the utilities themselves." Tax Policies in New Hampshire (1954) *pp.* 21-24. See also, Governor's Message to the Legislature, Journal of the House, January session 1955, *p.* 174. A former chairman of the Tax Commission indicted the present formula in the following words: "It is a farce and it is only by the grace of God that we have not had litigation over this thing before now." Journal, Const. Conv. 1948, *p.* 232.

Although the "interpretation" of this formula urged by the State might give it economic significance and obviate some of the constitutional objections it is not the expressed intention of the Legislature and cannot be substituted for it by this court. *Trustees &c. Academy* v. *Exeter,* 92 N. H. 473, 478. The words of the formula must be given their common and approved usage and so interpreted, require that the equity earnings be capitalized "at such rate as such public utility may lawfully be permitted to earn upon the *value of its property* devoted to such public utility use." (Emphasis supplied). The rate specified is the rate at which the company is permitted to earn on the value of its entire utility property and not merely on the undivided part thereof which represents the investment of the common stockholders. RSA 378:7; *Chicopee Mfg. Co.* v. *Company,* 98 N. H. 5. A tax so levied is in violation of *Art.* 12th, Pt. I and *Art.* 5th, Pt. II of our Constitution. *Williams* v. *State,* 81 N. H. 341, 349; *Opinion of the Justices,* 82 N. H. 561, 565; see *Bemis &c. Bag Co.* v. *Claremont,* 98 N. H. 446, 450.

We are of the opinion that RSA 83:4 shows an expressed legislative intent that the formula shall be used in determining the franchise value to be taxed. The other parts of said section are mere adjuncts of the formula. The Legislature demonstrated a clear and unmistakable intent to have the value of the franchise determined in a particular manner. As not all the provisions of said section 4 can be carried into effect and as it is impossible to tell whether the Legislature would have adopted any part of the section independently, the whole section is void. Since no standard of valuation remains in this statute (RSA ch. 83), no tax can lawfully be levied thereunder. *Ferretti* v. *Jackson,* 88 N. H. 296.

*Case discharged.*

All concurred.