Rockingham,
No. 6309.

TOWN OF LONDONDERRY & a.

*v.*

LOUIS FAUCHER.

December 29, 1972.

*Sayer & Giordano* (*Mr. James A. Sayer, Jr.,* orally), for the plaintiff town.

*Catalfo & Krans,* by brief, for the intervening plaintiffs Donald and Paula Babin.

*McLane, Carleton, Graf, Greene & Brown* (*Mr. Arthur G. Greene* orally) for plaintiff intervenor Joseph E. Faltin.

*Leonard J. Merski,* by brief and orally, for the defendant.

LAMPRON, J. The issues presented by this appeal are (1) whether the selectmen of Londonderry, charged with the enforcement of its zoning ordinance, have the authority to prevent the defendant from developing his parcel of land

for use as a trailer park; and (2) whether the defendant is barred from raising this issue by his failure to exhaust his administrative remedies under the ordinance.

After a hearing on the town's petition for an injunction, *Morris,* J., by agreement of the parties issued an order temporarily restraining the defendant from proceeding to develop his land as a trailer park. Thereafter the plaintiffs' prayer for a permanent injunction was submitted to a Master (*Leonard C. Hardwick,* Esq.) on an agreed statement of facts. The master's recommendation that the injunction be made permanent was adopted by *Keller,* C.J., who transferred defendant's exceptions.

Prior to the March 1969 town meeting, house trailers and mobile homes in Londonderry were considered as residences under the zoning ordinance. They were permitted in residential districts and agricultural districts. Londonderry, N.H., Regulations and Ordinances, ch. 1, *ss.* III J, V B (1966). At the March 1969 meeting, an article was adopted effective on enactment amending the ordinance to provide that "[e]very house trailer and mobile home hereinafter occupied as a dwelling shall be placed in an established trailer court or park."

On July 17, 1970, the defendant first signified his intent to establish a trailer park on his land by filing with the selectmen an application for a building permit which is required by section XI B of the zoning ordinance to "Establish Trailer Park". His permit was denied. He took no appeal but began, nevertheless, to develop his land for use as a trailer court. This led to the present petition in which certain abutters were permitted to intervene as plaintiffs.

The master found and ruled that the defendant was barred from setting up as a defense in this proceeding the authority of the selectmen to prevent him from establishing a mobile home park. The basis for this ruling was his failure to take an appeal from the denial of his permit and thus exhaust his administrative remedies.

The doctrine of exhaustion of remedies determines the stage at which a party may secure review of administrative action. 2 Am. Jur. 2d Administrative Law *s.* 595 (1962). It is based upon a policy of avoiding court interference with

the functions of administrative agencies. *Stanton* v. *Trustees of St. Joseph's College,* 233 A.2d 718, 724 (Me. 1967). It is not an absolute rule to be applied indiscriminately to all proceedings involving such an agency. 3 Davis, Administrative Law Treatise *s.* 20.01 (1958); Davis, Administrative Law Text *s.* 20.01 (3d ed. 1972); *see Durgin* v. *Brown,* 37 N.J. 189, 203, 180 A.2d 136, 143 (1962). Where the issue is not the proper exercise of administrative discretion, but rather whether or not an ordinance is valid or should apply at all, courts usually resolve the matter regardless of the administrative posture. *Biron* v. *New Ipswich,* 111 N.H. 343, 283 A.2d 683 (1971); *Bethlehem* v. *Robie,* 111 N.H. 186, 278 A.2d 345 (1971). We hold that the master improperly ruled that the defendant could not raise in the present proceeding the issue of whether the zoning ordinance applied to his establishment of a mobile home park.

A town may properly seek to regulate and restrict the location of mobile homes. *Greenland* v. *Hussey,* 110 N.H. 269, 266 A.2d 122 (1970); *Plainfield* v. *Hood,* 108 N.H. 502, 240 A.2d 60 (1968); 3 Yokley, Zoning Law and Practice *s.* 28-71 (3d ed. 1967); 2 Anderson, American Law of Zoning *s.* 11.54, at 375-76 (1968). "The most common and the most widely accepted type of regulation of residential trailers is that which confines them to established trailer parks or camps". 58 Am. Jur. Zoning *s.* 63, at 161 (1972 Cum. Supp.); *see* Annot., 96 A.L.R.2d 240 (1964). A common and ordinary meaning of the verb "establish" is "to bring into existence, create . . . build". Webster's Third New International Dictionary 778 (unabr. ed. 1961). It logically follows that an "established trailer court or park" is one that has come into existence, has been created or built.

The zoning amendment in question provided that: "Every house trailer and mobile home hereinafter occupied as a dwelling shall be placed in an established trailer court or park." We hold that the townspeople intended by adopting this amendment to confine all future location of residential trailers and mobile homes to trailer parks already in existence in Londonderry on the date of its adoption. To interpret this amendment as having no application to the development of new mobile home parks in the town, would not only subvert

the intended zoning plan, but also render the word "established" in the ordinance mere surplusage. Such a construction would violate cardinal rules of statutory interpretation that all words used should be given their ordinary meaning unless it appears from the context that a different meaning was intended. *Public Service* v. *State,* 101 N.H. 154, 163, 136 A.2d 600, 607 (1957); 2 Sutherland, Statutory Construction *s.* 4705 (3d ed 1943). We hold that the amendment controlled the establishment of a trailer park intended by the defendant. The injunction was properly decreed.

*Exceptions overruled.*

GRIMES, J., dissented; the others concurred.

GRIMES, J., *dissenting:*

I cannot join in the opinion of the court which takes a simple ordinance amendment designed to confine mobile homes to mobile home parks and converts it into a restriction against the creation of such parks without permission of the selectmen.

The court does this by construing "established" to refer only to those parks existing at the time of the adoption of the ordinance rather than to those parks existing at the time the home is placed therein. The ordinance contains no specific prohibition against mobile home park development nor are there any provisions which empower the selectmen to control their creation. Moreover no building permit is required because a mobile home park is not a "structure or building."

The court, by reading into the ordinance a provision giving the selectmen power to control the development of such parks, creates one which in my judgment is void for vagueness. There are absolutely no standards, guidelines, or criteria for the selectmen to follow and so the granting or denial of permits can be at their whim or caprice. *Ferretti* v. *Jackson,* 88 N.H. 296, 188 A. 474 (1936); *cf. State* v. *Dean,* 109 N.H. 245, 248 A.2d 707 (1968); *Bethlehem* v. *Robie,* 111 N.H. 186, 278 A.2d 345 (1971).

I think the only purpose of the amendment was to change from the policy of allowing mobile homes anywhere in a

residential or agricultural district to a policy of requiring them to be located in land areas especially laid out and equipped, that is "established" as mobile home parks at the time the homes are located thereon. This is the way in which the word "established" was used in the passage from American Jurisprudence quoted in the court's opinion.

The restriction which the court implies is a serious limitation not only on land use but also upon the number of mobile homes which may be located in the town. Mobile homes provide comfortable and decent shelter for many people unable to afford conventional types of homes. I would require that any restrictions upon their use be clearly expressed and reasonable. I consider the amendment as construed by the court to be neither.