Rockingham
No. 78-108

TOWN OF GREENLAND

v.

ULRIC BUNKER AND NATALIE BUNKER

November 15, 1978

*Boynton, Waldron, Dill & Aeschliman*, of Portsmouth (*Richard E. Dill* orally), for the town of Greenland.

*Griffin, Harrington, Brigham & Ritzo*, of Portsmouth (*Lindsey R. Brigham* orally), for Ulric Bunker and Natalie Bunker.

BROCK, J.  This controversy stems from a petition for injunctive relief brought by the town of Greenland, alleging that Ulric and Natalie Bunker are in violation of the town's zoning ordinance relating to mobile homes. The Master (*Laurence J. Gillis*, Esq.) found that the Bunkers were violating the ordinance by keeping a mobile home on their property. In accordance with the master's report, the Rockingham County Superior Court (*Mullavey*, J.) issued a decree requiring the Bunkers to remove the mobile home by a date certain or be subject to a fine of $100.00 per day for each day thereafter that the mobile home remained.

The facts are not in dispute. The defendants, Ulric and Natalie Bunker, own and occupy a home on approximately three acres of land in Greenland. Their property fronts on Route 101, the major highway between Portsmouth and Exeter, and is within a district designated by the town as a commercial zone. In the spring of 1976, the Bunkers' adult son Brian had his mobile home transported from North Carolina to his parents' Greenland property. The Bunkers made attempts to place the mobile home in a trailer park in the area, but were unable to find one that would accept it. Having no other place to put it, they stored it behind their house in an abandoned orchard. Later in 1976, Brian Bunker requested permission from the Greenland Board of Selectmen to occupy the mobile home with his family on a temporary basis. When the request was denied, he purchased a home in Portsmouth. The mobile home remains on his parents' property but has not been connected to any utility lines or otherwise prepared for occupancy, and has not been used as a dwelling unit since its arrival in Greenland. The Bunkers have made no commercially profitable use of the trailer, and have made repeated efforts to place it in a trailer park or to sell it. In fact, the master found that "the defendants have acted in good faith throughout, responding to a situation thrust upon them by the exigencies of military life."

The Bunkers do not contend that this ordinance is invalid or unconstitutional on its face. Rather they argue that it does not apply to the mobile home on their property. The particular section in dispute provides:

> No trailer, house trailer or mobilehome [sic] may be installed on any lot in any district by the owner of said lot, for his own occupancy or the occupancy of others save that the Board of Selectmen for good cause shown may grant a permit for the same for not more than three months at one time, and not more than one year together. It is the intent of this section solely to permit a person owning a lot to occupy such a trailer as a temporary home while engaged in the construction or reconstruction of his own domicile [sic].

Zoning Ordinance Art. VII § 5. Resolution of this dispute requires us to interpret the meaning and context of the words "installed . . . for . . . occupancy" as they appear in the ordinance.

Relying on *Riverview Park, Inc. v. Hinsdale*, 113 N.H. 693, 696, 313 A.2d 733, 735 (1973), the town asserts that this court held in *Greenland v. Hussey*, 110 N.H. 269, 266 A.2d 122 (1970), that its zoning ordinance forbids the physical placement of mobile homes anywhere in the town other than in an established mobile home park if one existed. Plaintiff overlooks the fact that in *Greenland v. Hussey* the defendant had taken steps to install a mobile home for occupancy on a lot not located in a mobile home park and was challenging the constitutionality of one section of the ordinance. The specific section at issue there has since been amended and does not in any event govern mobile homes in the commercial zone. The issue whether, under the ordinance, a trailer or mobile home not installed for occupancy could be located or placed elsewhere in the town was not addressed.

■ Words used in a zoning ordinance "should be given their ordinary meaning unless it appears from the context that a different meaning was intended." *Londonderry v. Faucher*, 112 N.H. 454, 457, 299 A.2d 581, 583 (1972). The ordinary meaning of the word "install" is "set up or fix for use or service." *E.g.*, 21A Words & Phrases 472 (1960); Black's Law Dictionary 939 (4th ed. 1951); Webster's Third New International Dictionary 1171 (1961). Installation of a mobile home for occupancy or use as a dwelling unit includes preparation of the site and connection of sewer, water, and electricity. *See Greenland v. Hussey*, 110 N.H. at 270, 266 A.2d at 124. Installation clearly involves something more than merely storing or placing a trailer or mobile home in a field. *Accord, City of Astoria v. Nothwang*, 221 Ore. 452, 351 P.2d 688 (1960).

■ In construing language not defined in the body of the ordinance we also "look to the ordinance as a whole and attempt to discern the meaning intended by the framers." *Trottier v. City of Lebanon*, 117 N.H. 148, 150, 370 A.2d 275, 277 (1977). The Greenland zoning ordinance permits designated "recreational camping areas" provided that they are not used as "permanent dwellings," so that their occupants do not "add to the school or general population of the Town of Greenland." Zoning Ordinance Art. IV, 12. The record reveals also that the town allows residents to park travel trailers and utility trailers on their property. Furthermore, we note that in the commercial zone where the Bunkers' property is located both trailer parks and trailer or mobile home dealerships are permitted uses under the ordinance. Taking the ordinance as a whole, it is clear that trailers or mobile homes may be present elsewhere in the town provided they are not set up or installed for occupancy.

■ Because the Bunkers' mobile home has never been installed on their lot in a manner that would make it fit for occupancy, we hold that article VII, section 5 of the ordinance is not applicable and therefore that the presence of the mobile home on their property does not violate the ordinance.

*Exceptions sustained; petition dismissed.*

All concurred.