Board of Taxation
No. 81-234

APPEAL OF PUBLIC SERVICE COMPANY OF NEW HAMPSHIRE
(New Hampshire Board of Taxation)

October 15, 1982

*Sulloway, Hollis & Soden,* of Concord *(Martin L. Gross* and *David F. Conley* on the brief, and *Mr. Conley* orally), for Public Service Company of New Hampshire.

*Gregory H. Smith,* attorney general *(Marc R. Scheer* and *Betsy S. Westgate,* assistant attorneys general, on the brief, and *Ms. Westgate* orally), for the State.

DOUGLAS, J. Public Service Company of New Hampshire (PSNH) appeals from an adverse decision of the board of taxation, alleging the following: (1) that the board erred in interpreting the statutory definition of "franchise taxable income" to include allowance for funds used during construction (AFUDC); and (2) that the inclusion of AFUDC in the franchise valuation for tax purposes is not permitted under the New Hampshire Constitution. For the reasons which follow, we reverse the board's decision.

AFUDC is an accounting mechanism that tracks the costs incurred by a utility in paying interest on borrowed money and in paying dividends on money raised through sales of stock during the time money is invested in unfinished construction. The interest on borrowed funds is treated as an offset to the current interest expense account. The cost of equity funds is treated as an addition to income. Additionally, both of these amounts are added to an electric generating plant's current asset account on the balance sheet. A utility cannot recover those costs until the construction is finished and the plant begins to generate electricity. Thus, a utility cannot recover the costs through current rates but rather must wait until the plant comes on line before requesting that the plant be included in the rate base through the rate-making process. It is then that consumers begin to pay rates high enough to enable the utility to recover the cost of construction, and the "capitalized" costs are recognized as a depreciation item.

In *Public Service Co. v. State,* 101 N.H. 154, 158, 136 A.2d 600, 604 (1957), this court held that the "intangible value arising from the permission and approval of the Public Utilities Commission to a

public utility corporation to exercise the right and privilege of engaging in the business of generating, distributing, transmitting and selling electric energy in this State . . . is property upon which a tax can be imposed." In that case, in the context of RSA chapter 83, a predecessor to RSA chapter 83-B, we held that the tax included an intangible value, "if any," which exists in a public utility over and above the value of its physical property. The plaintiff in that case argued that "a tax collected on account of property which has no value or collected upon a value far in excess of any value which it has in fact is in violation of Pt. I, Art. 12 and Pt. II, Art. 5 of our state Constitution." *Id.* at 160, 136 A.2d at 605. While the "value for rate-making purposes" need not be the same as the "value of a utility plant for tax purposes," *id.* at 161, 136 A.2d at 606, this court concluded that the tax as then worded was unconstitutional.

The current law imposes a nine-percent franchise tax on the "net income derived from the exercise of franchise," which is defined as "net utility operating income less deductions from income as reported in accordance with the applicable uniform classification of accounts of the public utilities commission in effect" on January 1, 1960. RSA 83-B:1 V & :2. The commissioner of revenue administration determined that the net income taxable under RSA chapter 83-B was $33,249,586, which meant a franchise tax of $2,992,487. Of those figures, $31,884,219 and $2,869,579.71, respectively, were the income and tax attributable to AFUDC. The principal question before us is whether the inclusion of the large and rising amount of AFUDC attributable to PSNH's multi-billion-dollar venture in constructing a nuclear generating plant known as Seabrook Station yields an economically rational result so as to withstand constitutional scrutiny under the New Hampshire Constitution's tax and due process clauses. N.H. CONST. pt. I, art. 12; pt. II, arts. 5 & 6.

At the time RSA chapter 83-B became effective, the entire AFUDC amount was recognized as a reduction to current interest expense. In 1970, the acceptable accounting method changed, and the entire amount was recognized as an addition to the "non-operating income." From 1977 to the present, the portion of AFUDC related to borrowed funds has been recognized as a credit or a reduction to interest expense. In crude economic terms, AFUDC merely documents a cost in anticipation of later recovery out of future revenues generated by higher rates. "AFUDC is an accounting entry and not actual cash revenue" but may be characterized "as a promise to pay in the future." *Re Public Service Company of N.H.*, 65 N.H.P.U.C. 251, 257 (1980). The board of taxation concluded that it was proper to include AFUDC as

additional income within the meaning of "net income derived from the exercise of franchise" under RSA 83-B:1 V.

A statute is to be construed to avoid a conflict with constitutional rights whenever reasonably possible. *See State v. Millette*, 112 N.H. 458, 465, 299 A.2d 150, 154 (1972). Thus, to the extent that the chart of accounts includes an item that does not bear a factual economic relationship to the value of franchise, the statute should be construed not to require its inclusion so as to *avoid an application of the statute* that would exceed the legislature's constitutional authority. The authority to impose a franchise tax is limited by the requirement that there be an economically rational relationship between the actual value of the franchise and the tax imposed on it. *Opinion of the Justices*, 84 N.H. 559, 566, 149 A. 321, 325–26 (1930); *see also Public Service Co. v. State*, 101 N.H. at 163, 136 A.2d at 607.

In *Opinion of the Justices*, 84 N.H. at 568, 149 A. at 326, the justices observed that "[i]f there is no value there is nothing to tax." The problem in this case is that the legislature has declared that, for the purpose of charging rates to the consumers of electricity, the Seabrook plant is of zero value by preventing any rates "based on the cost of construction work in progress" *until* the construction work is "completed." RSA 378:30-a (Supp. 1981) (anti-CWIP law). The State cannot ride two horses: it cannot say in one statute that the plant is of no value for cash income purposes until it is completed, yet can tax it as construction progresses as if it were of value. This is the fundamental unfairness that, since enactment of the anti-CWIP law, prevents receipt of franchise tax revenue for the AFUDC aspect of this plant. Moreover, it is not yet certain whether Seabrook Station Units One and/or Two will ever be completed, or if completed, whether PSNH will ever obtain Nuclear Regulatory Commission permission actually to operate. We can take judicial notice that many utilities have abandoned plans to complete nuclear plants after substantial periods of investment. *See, e.g., Petition of Northern Indiana Public Service Company*, Cause No. 36689 (Ind. Pub. Serv. Comm'n, August 11, 1982).

Under State law, only when service is actually being provided can the cost of a plant be included in the rate base. RSA 378:30-a (Supp. 1981). The anti-CWIP statute prohibits PSNH from recovering, through rates, the cost of unfinished construction, including the financing cost, "until, and not before, said construction project is actually providing service to consumers." RSA 378:30-a (Supp. 1981). That statute prohibits rates or charges "in any manner [to] be based on the cost of construction work in progress." Were it not for

this statute, PSNH would be allowed to include the amount of its plant construction in its rate base and earn a return on that amount through current rates, thereby offsetting its financing costs and eliminating the need to accumulate the amount currently allocated to pay AFUDC. *See LUCC v. Public Serv. Co. of N.H.*, 119 N.H. 332, 342–51, 402 A.2d 626, 633–39 (1979).

Thus, the more it costs to build the plant, the greater the AFUDC account and the greater the amount of tax on something that is not producing actual income and does not yet have any economic value to the franchise for rate purposes. In effect, the application of RSA chapter 83-B to the factual setting in which PSNH finds itself means that the State has required PSNH to pay a franchise tax calculated as if there were no anti-CWIP statute, thereby requiring PSNH to pay a tax as though it were recovering construction financing costs in current rates. In essence, the government is treating as income, for franchise tax purposes, amounts which PSNH cannot lawfully recover in current rates. This procedure forces the company into even greater borrowings to cover the resulting tax liability which, in turn, only drives up the amount of construction costs that will soon be passed on to the consumers.

Any franchise tax based upon the AFUDC account related to Seabrook Station would be an operating expense recoverable from ratepayers in their electric rates. Of course, this runs counter to the anti-CWIP law that prevents any rates from being based "in any manner" on the cost of construction work in progress. RSA 378:30-a (Supp. 1981). The New Hampshire Public Utilities Commission has also observed a double collection problem in this regard:

> "[T]he decision by the state to impose a tax on AFUDC income results in a double collection from ratepayers. First, during the construction period when such allowances are included as income and again when the plant becomes operational, a return is earned on the plant. When the plant becomes operational and is placed in rate base, the accumulated AFUDC is also placed in rate base, which is then multiplied by a return which is then subject to the New Hampshire franchise tax.
>
> The effect of this double collection from ratepayers has been challenged by PSNH. The commission applauds Public Service Company for this attempt to minimize the costs of electricity to its ratepayers."

*Re Public Service Company of N.H.*, 65 N.H.P.U.C. at 257–58.

To the extent that the franchise tax liability was increased by $2,869,579.71 for 1979, and in later years since the date of the

anti-CWIP act (May 7, 1979), the statutory formula in RSA 83-B:1 V and :2 for "net income" does not bear a rational relationship to economic reality and therefore is unconstitutional as applied here. What may be a valid accounting tool does not mean that it is a fair tax method.

*Remanded for reassessment of
1979 franchise tax liability.*

KING, C.J., did not sit; BATCHELDER, J., dissented; the others concurred.

BATCHELDER, J., dissenting: I agree with the decisions of the commissioner of revenue administration and the New Hampshire Board of Taxation that AFUDC is properly included in "franchise taxable income." The fact of construction must somehow be recognized in the valuation of the franchise even if it is not an asset for rate making purposes. *Opinion of the Justices*, 84 N.H. 559, 567–68, 149 A. 321, 326 (1930). The franchise tax is a tax upon the utility's exclusive right to engage in the utility business. *Public Service Company v. State*, 101 N.H. 154, 158, 136 A.2d 600, 604 (1957). Additionally, the inclusion of AFUDC in "franchise taxable income" is a generally accepted accounting technique in the utility business. J. BONBRIGHT, THE VALUATION OF PROPERTY 2 vols. (1937). A franchise is not an asset for ratemaking purposes; therefore, RSA 378:30-a (Supp. 1981), a ratemaking statute, should have no effect on the analysis of tax items. *Opinion of the Justices, supra.* Public Service Company of New Hampshire includes AFUDC in its annual report to stockholders on its earnings statement. The inequities envisioned by the majority are more apparent than real because the legislature had the good sense to allow a credit for franchise taxes against the company's liability for business profits tax payments.

I do not find, as the majority does, the failure of a rational relationship to economic reality in this case warranting the heavy sanction of an unconstitutional declaration cutting across the treatment of AFUDC by every utility in New Hampshire.