Request of the Senate
No. 83-203

## OPINION OF THE JUSTICES

June 6, 1983

The following request of the Senate for an opinion of the justices was adopted May 12, 1983, and filed with the Supreme Court on May 18, 1983:

"Whereas, House Bill 500 is pending before the Senate; and

"Whereas, an amendment has been proposed to HB 500 which would amend the franchise tax; and

"Whereas, the amendment proposes to impose the franchise tax on 'gross receipts' of the utility rather than 'net income' derived from the exercise of franchise; and

"Whereas, as a result of the Supreme Court's opinion in *Appeal of Public Service Company of New Hampshire*, 122 N.H. 919 (1982), certain questions have arisen as to the constitutionality of the proposed amendment; now, therefore, be it

"Resolved by the Senate:

"That the Justices of the Supreme Court be respectfully requested to give their opinion upon the following questions:

"1. Does the proposed amendment to HB 500 violate the requirement that there be an economically rational relationship between the actual value of the franchise and the tax imposed on it?

"2. Would the taxation of a public utility's "gross receipts" result in the fundamental unfairness found to result under the current franchise tax, RSA 83-B, in *Appeal of Public Service Company of New Hampshire*, 122 N.H. 919 (1982)?

"3. If the answers to questions 1 and 2 are in the negative, are the provisions of the proposed amendment otherwise unconstitutional?

"Be it further resolved that the clerk of the Senate transmit 7 copies of this resolution to the Justices of the Supreme Court along with an equal number of copies of HB 500 and the proposed amendment to HB 500."

The following answers were returned:

*To the Honorable Senate:*

The undersigned Justices of the Supreme Court reply as follows to the questions contained in your resolution adopted May 12, 1983, regarding the proposed amendment to House Bill 500. Interested

parties were permitted to file memoranda until May 24, 1983. Memoranda were filed on behalf of the commissioner of revenue administration and the gas and electric utility members of the Association of New Hampshire Utilities.

Proposed RSA chapter 83-C, as presented in the amendment to House Bill 500, would replace the current franchise tax on gas and electric public utilities, RSA chapter 83-B, with a new statutory scheme for a franchise tax on such public utilities. Many of the provisions of the proposed legislation would reenact sections of RSA chapter 83-B; the principal change would be in the base upon which the tax is imposed. The current franchise tax is assessed at the rate of nine percent upon the "net income derived from the exercise of franchise" within the State, RSA 83-B:2, which is defined as the "net utility operating income less deductions from income as reported in accordance with the applicable uniform classification of accounts of the public utilities commission in effect" on January 1, 1960, when the statute took effect. RSA 83-B:1, V; *see Appeal of Public Serv. Co. of N.H.*, 122 N.H. 919, 921, 451 A.2d 1321, 1323 (1982).

Proposed RSA chapter 83-C would impose a one percent tax upon the "gross receipts" of a gas or electric public utility derived from the exercise of its franchise in this State. The proposed legislation defines "gross receipts" only as "all receipts from the public utility over, on, in, through or from the whole of its lines, or mains . . . ." We interpret this as meaning the gross receipts derived from the utility's sale of electric power or gas. Excluded from the receipts covered by this definition, apparently for the purpose of avoiding double taxation, are amounts received from the sale of its "products" to other public utilities subject to a tax on "gross receipts."

■ The first question presented is whether this change in the method of assessing the franchise tax violates the requirement that there be an economically "rational relationship" between the actual value of the franchise and the tax imposed upon it. *See Appeal of Public Serv. Co. of N.H.*, 122 N.H. at 922, 451 A.2d at 1323. The taxation of franchises is expressly authorized by our State Constitution. N.H. CONST. pt. II, art. 6; *see Opinion of the Justices*, 84 N.H. 559, 566, 149 A. 321, 325 (1930).

Our legislature first established a franchise tax on public utilities in 1931, when it imposed "an annual tax . . . upon the actual value of the franchises held or exercised by the utility . . . at a rate as nearly equal as may be to the average rate of taxation at that time upon *other property* throughout the state." Laws 1931, 124:1 (emphasis added). After certain aspects of the franchise tax were held unconstitutional by this court, *see Public Service Co. v. State*, 101 N.H. 154,

136 A.2d 600 (1957), the legislature solicited the court's advice on various proposed means of taxing public utilities in this State.

The justices of this court advised that the legislature might continue to levy a franchise tax conceived as being a tax on the franchise as "property in ownership," and that such a tax would "be subject to the constitutional limitations which apply to the general property taxes." *Opinion of the Justices*, 101 N.H. 549, 555, 137 A.2d 726, 731 (1932). The court was also asked to advise whether "[i]nstead of an *ad valorem* property tax . . . the General Court [might] establish an annual fee to be charged each holder of such a franchise for the extraordinary privilege thereby granted." *Id.* at 552, 137 A.2d at 729; *see also* Address of Governor Dwinell to the Special Session of the Legislature on February 11, 1958, N.H.H.R. JOUR. 9, 11 (1958). The justices advised that this type of franchise tax "would be distinct from the general property tax or tax upon estates," *Opinion of the Justices*, 101 N.H. at 556, 137 A.2d at 731, and that, because it would be based on a "generative source" other than simple ownership, such a tax would *not* need to "be correlated either in mode of assessment or by uniformity of rate, with the general property tax. . . ." *Id.* at 557, 137 A.2d at 732.

The justices were of the opinion that

> "franchises of utilities may properly be taxed at a special rate, distinct from that imposed upon incomes, or inheritances, or by the general property tax. We see no reason why such a special tax upon utility franchises may not validly be imposed *by reason of the receipt of income from the exercise of such franchises, or why it may not be levied at a special rate, and in proportion to the amount of income received through exercise of the franchises.*"

*Id.* at 557, 137 A.2d at 732.

The justices stated further that, the exercise of a utility franchise being a special right conferred by the State, it might "be taxed when its exercise produces income, and the amount of the tax may be measured by the amount of income so received." *Id.* at 557, 137 A.2d at 732.

The legislature, relying on the advice rendered by the court, established a utility franchise tax upon "net income" derived from the exercise of the franchise. RSA 83-B:1, V; *see Opinion of the Justices*, 102 N.H. 22, 149 A.2d 308 (1959) (franchise tax measured by net income is constitutional and, on its face, not confiscatory).

The use of a public utility's income as a reflection of the value of its franchise has always been subject to the constitutional

requirement that the basis used to measure franchise value cannot be "contrary to fact," *Opinion of the Justices*, 101 N.H. at 556, 137 A.2d at 731, and we have stricken statutory valuation formulas that had "no economic significance." *See, e.g., Public Service Co. v. State*, 101 N.H. at 162–63, 136 A.2d at 606–07.

■ We do not believe, however, that the income which may be used to determine or measure the amount of the *franchise tax*, must be "net" income as provided in the present statute, RSA chapter 83-B. Indeed, it can be argued persuasively that the use of gross receipts or income from the sale of electricity or gas as the measure for a franchise tax, rather than "profitability," is sounder economically when public utilities, statutorily entitled to rates or gross receipts sufficient to give them a reasonable rate of return on their investment, are involved, *see* RSA 378:27, :28, rather than private enterprises. We note that twenty-nine other jurisdictions base their public utility taxes on some form of gross receipts or gross income. *See generally* 2 ST. TAX GUIDE (CCH) ¶ 80-000 to -890.

■ For these reasons, we cannot say that the requirement of a rational economic relationship between the tax imposed and the value of the franchise would be violated through a tax on "gross receipts." We therefore answer question one in the negative.

■ The tax as proposed would tax only income received from the sale of electricity and gas, and therefore would not include any part of a franchise that was not presently producing such income. In addition, taxes properly paid are legitimately included in the cost of doing business, and the rates which are allowed must provide for their recovery. Because of these facts, and given the unique and protective statutory and regulatory setting in which gas and electric utilities operate, we do not view the proposed tax as resulting in fundamental unfairness, as was found to exist in the context of *Appeal of Public Serv. Co. of N.H.*, 122 N.H. 919, 451 A.2d 1321 (1982). For this reason, and because of our view, stated above, that the tax is rationally related to the franchise value, we answer the second question in the negative.

■■ The third question posed in the Senate's resolution asks us whether the proposed franchise tax legislation would be otherwise unconstitutional. Proposed RSA chapter 83-C would tax affected utilities retroactively to the beginning of 1983. Because utilities are constitutionally prohibited from seeking rate increases for services rendered prior to the date they make such requests, *Appeal of Pennichuck Water Works*, 120 N.H. 562, 566–67, 419 A.2d 1080, 1083 (1980), the legislature could not retrospectively tax utility fran-

chises. N.H. CONST. pt. I, art. 23. Otherwise, such a bar to a utility's recovery of taxes imposed retrospectively might be an unconstitutional confiscation of private property for a public purpose without just compensation. U.S. CONST. amends. V & XIV; N.H. CONST. pt. I, art. 12. Consequently, any tax on gas and electric utility franchises must apply prospectively only.

■ We also note that proposed RSA chapter 83-C contains no reference to apportionment of income received within and without New Hampshire, similar to that in RSA chapter 83-B. *See* RSA 83-B:1, VI; RSA 83-B:6, :8. As we recently stated in *Opinion of the Justices*, 123 N.H. 296, 460 A.2d 93 (1983), such apportionment is necessary to satisfy federal constitutional concerns relating to due process and interstate commerce, and any legislation to tax the "gross receipts" of gas and electric utilities should contain an apportionment provision. *See* 2 ST. TAX GUIDE (CCH) ¶ 80-000, at 8005.

■ We perceive no other constitutional infirmities in the proposed amendment to House Bill 500 and, provided that the bill is properly amended to address the concerns noted herein, our answer to question three is therefore in the negative.

MAURICE P. BOIS
CHARLES G. DOUGLAS, III
DAVID A. BROCK

We do not share the constitutional interpretation placed upon the proposed legislation by the majority, and accordingly, we write separately. We view the proposed statutory scheme before us as invalid when held against our State Constitution as it previously has been interpreted by this court. The reasons which lead us to this view follow.

The view expressed here is predicated upon the fact that the three questions submitted by the Honorable Senate deal with the proposed amendment to House Bill 500, in the form appended to Senate Resolution No. 12, known as RSA chapter 83-C, the Franchise Tax. The abstract question as to the constitutionality of a gross receipts tax on utilities is not before us at this time.

At the outset an important and critical distinction must be understood. The proposed legislation would not establish a *gross receipts tax*. It would use gross receipts as the means for determining the value of a public utility's franchise for the assessment of a *franchise tax*. It is this approach which causes the problems for us. We read the case law delineating the constitutional basis for taxing a public utility's franchise differently from the majority. We read the cases

as requiring an economically rational relationship based upon the value or profitability of the franchise, and a tax based upon gross receipts does not meet this test.

A public utility's franchise which constitutionally may be taxed, over and above its physical property, includes "any intangible *value* arising from the permission and approval of the Public Utilities Commission to a public utility corporation to exercise the right and privilege of engaging .in the business of generating, distributing, transmitting and selling electric energy [or gas] in this state . . . ." *Public Service Co. v. State*, 101 N.H. 154, 158, 136 A.2d 600, 604 (1957) (emphasis added). "Value" means "the monetary worth of something." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2530 (1961). Insofar as we believe that the gross receipts of a utility do not reflect its monetary worth as our previous case law has construed this term, we cannot join in the majority's opinion.

The majority's opinion is correct, insofar as it recognizes that statutory valuation formulas for franchise tax purposes must not be contrary to fact and that this court has stricken statutory valuation formulas that had "no economic significance." *See, e.g., Public Service Co. v. State*, 101 N.H. at 162, 163, 136 A.2d at 606, 607. The current franchise tax is not assessed based upon *gross* income, but upon *net* income. The gross income of a public utility may not necessarily reflect the value, if any, of its franchise. *Cf. Opinion of the Justices*, 84 N.H. at 566, 149 A. at 326 (whether a franchise has value, and the amount thereof, are prerequisite to taxation; if there is no value, there is nothing to tax).

In the *Opinion of the Justices*, 101 N.H. at 557, 137 A.2d at 732, relied upon by the majority, we held that "[w]hile the [franchise] right is undoubtedly property, . . . it does not follow that it must be taxed by means of a general property tax . . ." (citation omitted). Accordingly, we found that the franchise could be taxed "when its exercise produces *income,* and the amount of the tax may be measured by the amount of *income* so received." *Id.,* 137 A.2d at 732 (emphasis added). That response of the justices was in regard to a question as to whether a franchise could be taxed on the basis of a percentage of its "net operating income." *Id.* at 553, 137 A.2d at 729. Moreover, the term "income" in its generic sense means "a gain or recurrent benefit . . . measured in money . . . but *excludes unrealized advances in value . . . .*" WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1143 (1961) (emphasis added). It is common knowledge that corporations pay dividends to stockholders based primarily upon net income; dividends are not paid generally based upon gross receipts. The "economically rational relationship" which the dissent found to exist in the present RSA chapter 83-B, as expressed in

*Appeal of Public Serv. Co. of N.H.*, 122 N.H. at 924, 451 A.2d at 1323, we find singularly absent in the legislation before us.

The taxation of gross receipts as the measurement of the *value* of a public utility's *franchise* would sweep too broadly. It is self-evident that a tax base which does not allow reasonable deductions of fixed and operating costs cannot accurately reflect the value of the franchise right. Gross receipts could well coincide with substantial operating losses, thus representing something other than true economic value. For example, as demonstrated by the 1973 oil embargo, drastic increases in the price of fuel used to generate electricity may result in increased gross receipts because fuel costs are passed on directly to consumers, *see* RSA 378:3-a (Supp. 1981), but could also discourage electricity consumption and cause huge financial losses to the utility. *See* Kamerschen & Paul, *Erosion and Attrition: A Public Utility's Dilemma,* 102 PUB. UTIL. FORT. 21, 22–28 (December 21, 1978). In such an economic situation, as the gross receipts increase the value of franchise decreases.

The exclusive privilege to do business as a utility (*i.e.*, possession of a franchise) on a loss basis has no value, and therefore there is nothing to tax. *See Opinion of the Justices,* 84 N.H. at 566, 149 A. at 326. Consequently, we believe that the taxation of gross receipts as a measurement of the value of a public utility's franchise would not satisfy the "economically rational relationship" standard, and would be unconstitutional. The majority appears to rely, in part, upon the fact that public utilities, pursuant to RSA 378:27 and :28, are entitled to have rates set which are sufficient to yield a reasonable rate of return on investment. Public utilities are not entitled to a profit, and there may be a wide margin between the reasonable rate of return on investment allowed by a regulatory agency on the one hand, and profit on the other. *See Public Service Co. v. State,* 101 N.H. at 161–62, 136 A.2d at 606. Accordingly, we would answer question one in the affirmative.

The second question presented in the Senate's resolution is whether the taxation of a public utility's gross receipts would result in fundamental unfairness similar to that found by the majority of this court to be inherent in taxation of allowance for funds used during construction (AFUDC) in the recent decision in *Appeal of Public Serv. Co. of N.H.,* 122 N.H. 919. To the extent we believe the taxation of a public utility's gross receipts would not bear an economically rational relationship to the actual value of its franchise, we are of the opinion that proposed RSA chapter 83-C would also produce the same fundamental unfairness that a majority of this court held was caused by the taxation of AFUDC. We would therefore answer question two in the affirmative.

Consequently, because we are of the opinion that the proposed tax does not meet the constitutional requirements for a franchise tax, we believe that the proposed legislation sanctions a one percent sales tax on the consumption of electricity and gas to be borne by the consumers of this State under the misnomer of a franchise tax. 2 ST. TAX GUIDE (CCH) ¶ 60-000, at 6012.

JOHN W. KING

WILLIAM F. BATCHELDER

*Gregory H. Smith,* attorney general (*Marc R. Scheer,* assistant attorney general), filed a memorandum on behalf of Lloyd M. Price, Commissioner, New Hampshire Department of Revenue Administration, in support of the constitutionality of the proposed amendment to House Bill 500.

*Ransmeier & Spellman,* of Concord (*John C. Ransmeier* and *Dom S. D'Ambruoso*), filed a memorandum on behalf of the gas and electric utility members of the Association of New Hampshire Utilities in opposition to the constitutionality of the proposed amendment to House Bill 500.